IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| ABDUL JONES | NO. 23-477 |

**Pappert, J.**                                                                                              **July 24, 2024**

## MEMORANDUM

A grand jury in the Eastern District of Pennsylvania charged Abdul Jones with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The firearm was discovered while searching his car pursuant to a warrant, after Jones was arrested and the car seized in a narcotics investigation. Jones moves to suppress evidence of the gun found in his car, arguing that there was not probable cause to arrest him or search the car or, alternatively, even if there was probable cause, it dissipated before the search.

The Court held an evidentiary hearing on Jones's Motion to Suppress on July 17, 2024. (ECF No. 27). After evaluating all testimony and considering all arguments, the Court denies the Motion.

I

On January 4, 2023, around 4:00 p.m., Philadelphia Police Officer Michael Robertson and his partner, Officer Outterbridge,[1] were conducting plain-clothes narcotics surveillance. (July 17, 2024 Hr'g Tr. 17:14-18:21, ECF No. 28). They parked

---

[1]     Nothing in the record provides Officer Outterbridge's first name.

1

their SUV on the east side of North 23rd Street, three to four cars' lengths south of the intersection of North 23rd Street and Nicholas Street. (*Id.*) Officer Robertson was sitting in the back of the SUV, looking out the rear window. (*Id.* at 17:24-18:10)

Officer Robertson described the 1600 block of North 23rd Street and the surrounding blocks as a "high crime area" (*Id.* at 14:1-22). He has been an officer for fourteen years—the last seven years with the Narcotics Strike Force unit (*id.* at 12:7-25)—has been involved in thousands of narcotics investigations, and has conducted surveillance in the area surrounding the 1600 block of North 23rd Street twenty to thirty times. (*Id.* at 13:21-25; 31:23-25). All of the hearing witnesses testified credibly—Officer Robertson particularly so.[2]

Officer Robertson was observing the west side of North 23rd Street when he saw a female, later identified as Ms. Bing, approach a male, later identified as Mr. Murphy. (*Id.* at 19:15). Bing and Murphy spoke outside the Estrella Grocery, near the corner of North 23rd and Nicholas Street, and Bing handed "green paper money" to Murphy. (*Id.* at 19:16-17; 26:24-28:1; 46:3-5); *see* (Gov't Exh. 1). Murphy then walked northbound toward a dark blue Dodge Durango, opened the passenger side door, and entered the

---

[2] Jones contends that at least some of Officer Robertson's testimony was not credible because, *inter alia*, it was inconsistent with his arrest report with respect to the precise location from which he was observing the events leading to Jones's arrest. (Hr'g Tr. 137:1-139:8). In his report, Officer Robertson said he conducted surveillance at 1600 North 23rd Street. (Def. Exh. 3, p. 2). During the hearing he testified he was "three to four" cars' lengths south of the intersection between Nicholas and North 23rd Street (Hr'g Tr. 17:16-22)—placing him near 1615 North 23rd Street—which is still on the 1600-block of North 23rd Street. *See* (Gov. Exhs. 1, 4). This description is not inconsistent with the arrest report and the Court credits Officer Robertson's testimony.

car before walking back to Bing and handing her a small item.  (*Id.* at 19:18-22).  Bing then walked northbound on 23rd Street. (*Id.* at 19:22-23).

Officer Robertson described Bing to the backup officers with instructions to stop her.  (*Id.* at 19: 24-25).  At 4:18 p.m., Officer Newman stopped Bing, recovered a package stamped "high life"—which was later found to contain marijuana—and issued her a code violation notice.  (*Id.* at 20:1-3; 30:19-24; 35:15-16; 59:1-10).

During this time, Jones crossed from the east side to the west side of North 23rd Street and had a conversation with Murphy outside the Estrella Grocery store.  (*Id.* at 20:4-6; 33:5-12).  Murphy then walked northbound, turned southbound, and then both he and Jones started walking northbound on North 23rd Street.  (*Id.* at 20:4-11; 33:16-19).

While walking northbound, Jones approached the driver's side of the Dodge Durango and the lights of the car turned on.  (*Id.* at 34:3-13).  Jones then entered the driver's seat.  (*Id.* at 33:14-16).  At that time, Officer Robertson radioed backup officers to stop both Jones and Murphy.  (*Id.* at 20:11-20; 63:18-22).

At 4:30 p.m., Officer Patrick Biles stopped Jones and asked him to step out of the Durango.  (*Id.* at 61:6; 77:1-78:5).  Officer Biles searched Jones and recovered a package later confirmed to contain marijuana (and in the same packaging as Bing's, stamped "high life"), handcuffed Jones, put him in the back of the police car and investigated the Durango's ownership and registration.  (*Id.* at 35:15-16; 78:6-15).  Officer Biles never entered the Durango. (*Id.* at 80:11-12).  He and his partner, Sergeant Weber, left the scene in their police car. (*Id.* at 80:1-10).

The Durango was transported to a police lot at 4298 Macalester Street, and Robertson applied for, received and executed a search-and-seizure warrant for the car. (*Id.* at 36:10-17).

II

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. As a general matter, searches and seizures must be based upon probable cause and executed pursuant to a warrant. *See, e.g., Katz v. United States*, 389 U.S. 347, 357 (1967). "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.*

To have evidence suppressed, the defendant has the burden of establishing that his Fourth Amendment rights were violated. *United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992) (citation omitted). "However, once the defendant has established a basis for his motion . . . the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Mostronardo*, 987 F.Supp. 2d 569, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14). The burden imposed is proof by preponderance of the evidence. *Matlock*, 415 U.S. at 178 n.14.

A

1

An officer may constitutionally arrest a person without a warrant, so long as that arrest is supported by probable cause. *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

Probable cause exists "if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it." *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir.2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Probable cause is based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983).  It is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002) (quoting *Gates*, 462 U.S. at 232)).

Under the "collective knowledge" doctrine, the knowledge of some members of law enforcement may be imputed to others to support a finding of reasonable suspicion or probable cause. *United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010).  "It is well established . . . that the arresting officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause." *United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002).

2

The police officers had probable cause to arrest Jones.  Based on Officer Robertson's experience and familiarity with the area he was watching, he believed the exchange between Murphy and Bing was a drug transaction and the Dodge Durango was where the drugs were stored.

Jones argues that he was "arrested pursuant to a hunch" (Hr'g Tr. 118:10-11), and that "one interaction" between Murphy and Bing does not rise to the level of establishing probable cause to arrest and search Jones's car. (*Id.* at 119:6-8).  But the

exchange between Murphy and Bing was not all that Officer Robertson relied upon before radioing his backup officers to arrest Jones. Officer Robertson also heard over radio that Bing was stopped, and a green leafy substance (later confirmed to be marijuana) was found on her. (*Id.* at 30:19-22; 58:25-59:10). He then observed Jones and Murphy having a conversation, Jones walking toward the same Dodge Durango that Murphy previously entered, the Durango's lights turning on, and Jones entering the driver's seat of the car. (*Id.* at 20:4-11; 33:5-34:13). Under these circumstances, there was probable cause to believe drugs were being stored in the car and that Jones was involved in their distribution.[3]

B

1

Under the Fourth Amendment's requirement that a warrant be issued based on probable cause,[4] the term "probable cause" requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Gates*, 462 U.S. at 243 n. 13. For probable cause to issue a search warrant, "there needs to be 'a fair

---

[3] A search incident to a proper arrest is an exception to the general warrant requirement. *See Riley v. California*, 573 U.S. 373, 382 (2014). An arresting officer conducting such a search incident to arrest may search the "arrestee's person and the area 'within his immediate control.'" *Id.* at 383 (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969))
  Since Jones was lawfully arrested, searching him incident to that arrest—when the marijuana was recovered—was also lawful. During the evidentiary hearing, Jones focused on the propriety of the arrest but did not directly contest the subsequent search—presumably acknowledging that the recovery of marijuana would be lawful if the arrest was lawful. *See* (Hr'g Tr. 130:19-131:3).

[4] There "is a distinction between probable cause to arrest and probable cause to search." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (citing *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). "[S]earch warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Tehfe*, 722 F.2d at 1117. "However, accepting this premise does not mean that the information used to determine if there was probable cause to arrest is irrelevant when determining if there is probable cause to search." *United States v. Jones*, 994 F.2d at 1055.

probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Gates*, 462 U.S. at 238)).  A reviewing court need not determine whether probable cause actually existed; rather, the court must find there was a "'substantial basis' for concluding that probable cause existed."  *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *Gates*, 462 U.S. at 238)).[5]

2

Jones claims that the search warrant is invalid because it was predicated on an earlier Fourth Amendment violation: his arrest and the search incident to that arrest, in which Officer Biles recovered marijuana.  (Hr'g Tr. 132:23-133:6).[6]

For the reasons described *supra*, the underlying arrest and search incident to arrest were constitutionally lawful.  *See* Section III.A.  But even if the arrest and search of Jones were constitutionally infirm—such that the marijuana recovered from Jones

---

[5] Even if Officer Robertson had not obtained a warrant to search the Durango, that search would be justified under the "automobile exception" to the warrant requirement.  This exception "allows police to search a vehicle so long as there is 'probable cause to believe the vehicle contains evidence of criminal activity.'"  *United States v. Cobb*, 483 F. App'x 719, 723 (3d Cir. 2012) (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009)).  For constitutional purposes, there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant."  *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

And "if probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014) (quoting *United States v. Ross*, 457 U.S. 798, 825 (1982)).  Furthermore, "probable cause does not dissipate after the automobile is immobilized because the exception does not include an exigency component."  *Donahue*, 764 F.3d at 300 (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)).  Therefore, "the government can search an impounded vehicle without a warrant even though it has secured the vehicle against the loss of evidence and it has the opportunity to obtain a warrant for the search."  *Id.*

[6] In his Motion to Suppress, Jones also argued that the purportedly tainted warrant could not be saved by the "good-faith exception."  *See* (Mot. to Suppress, pp. 13-17, ECF No. 20).  Jones did not offer the warrant into evidence and, at the evidentiary hearing, acknowledged that the good-faith exception is not relevant to the Court's analysis.  (Hr'g Tr. 134: 13-21).

could not provide probable cause to search the Dodge Durango—the officers still had independent grounds to search the car.[7]  After observing the transaction between Murphy and Bing and being informed that Bing had been found with alleged marijuana, Officer Robertson—with fourteen years' experience conducting narcotics surveillance, including hundreds of instances where drugs were stored in cars, *see* (Hr'g Tr. 32:9-13)—believed there was a greater than fair probability that evidence of drug trafficking would be found in the Durango.

C

Finally, Jones argues that even if probable cause existed at the time of his arrest, police officers "at least frisked" the front of the car and found no additional marijuana, and therefore probable cause dissipated before the car was transported to the police lot and searched.  (Hr'g Tr. 121:9-10; 122:1-4).

But there is no evidence that officers searched Jones's car before transporting it and searching it pursuant to a warrant.  Officer Biles, who arrested Jones, did not enter the vehicle let alone open any of its compartments. (Hr'g Tr. 79:18-19; 80:5-7).  Nor did Officer Biles and his partner, Sergeant Weber, drive Jones's car to the police lot.  (*Id.* at 81:1-10).  Nothing in the record indicates who transported the car to the police lot before it was searched.

Nevertheless, Jones argues that the "natural inference" from the record is that Officer Robertson received a radio call informing him that there were no drugs in the Dodge Durango and therefore probable cause dissipated before transporting the car. (Hr'g Tr. 127:23-25; 128:1-11).  Jones relies on Officer Robertson's preliminary hearing

---

[7]   Jones's counsel acknowledged that if the Court finds probable cause to search the car "independent of Mr. Jones," his motion cannot succeed.  (Hr'g Tr. 132:2-4).

testimony in which, while being cross-examined, he said he could not see inside the car and that marijuana was found on Jones but not on Murphy or in the car.  (Def. Exh. 2, 22:11-22).

The preliminary hearing testimony does not show that Officer Robertson received a radio call with this information—there is no mention of radio communication in that section of the preliminary hearing transcript.  Moreover, Officer Robertson's statements summarized what occurred that day—he was not providing a detailed timeline of the officers' actions.  Finally, and at bottom, Jones admitted during the evidentiary hearing that the car was not searched before being impounded.  (Hr'g Tr. 128:20-23; 129:12-14).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.